(No. 69245.—)

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* JOHN BARICEVIC, Petitioner, v. THE HONORABLE MILTON S. WHARTON, Respondent.

*Opinion filed May 30, 1990.*

John Baricevic, State's Attorney, of Belleville, and Kenneth R. Boyle and Stephen E. Norris, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, for petitioner.

Hon. Milton S. Wharton, of Belleville, respondent *pro se.*

JUSTICE CLARK delivered the opinion of the court:

This motion for a supervisory order arises out of six criminal proceedings in the circuit court of St. Clair County. Petitioner, John Baricevic, the State's Attorney of St. Clair County (the State's Attorney), requests this court to order the presiding judge in those cases, respondent, the Honorable Milton S. Wharton of the circuit court of St. Clair County (Judge Wharton), to transfer the cases to a different judge pursuant to section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c)).

On July 11, 1989, the State's Attorney filed motions in six criminal cases before Judge Wharton for substitution of judge pursuant to section 114—5(c). Section 114—5(c) provides:

> "Within 10 days after a cause has been placed on the trial call of a judge the State may move the court in writing for a substitution of that judge on the ground that such judge is prejudiced against the State. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The State may name only one judge as prejudiced, pursuant to this subsection." (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c).)

Each motion was filed within 10 days after its corresponding case had been placed on the trial call, alleged that Judge Wharton was prejudiced, and stated that no other motion for substitution of judge had been filed in the particular case.

Judge Wharton refused to grant the State's Attorney's motions. Instead, Judge Wharton, relying upon language from this court's opinion in *People v. Walker*

(1988), 119 Ill. 2d 465, concluded that before granting the motions he could:

> "make a limited inquiry as to facts and circumstances supporting a claim of prejudice when, as in the facts of this situation, the Court is substituted by the State on a blanket basis and the State indicates that it would continue to substitute the Judge and that the Judge would be prejudiced in all other cases arising in the future."

Judge Wharton then determined that the State's Attorney was using the motions in an attempt to cause the chief judge of the circuit court to remove Judge Wharton from the felony docket of the circuit court. Such interference with the chief judge's assignment power under Supreme Court Rule 21(b) (107 Ill. 2d R. 21(b)), Judge Wharton concluded, violates the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1). Accordingly, Judge Wharton denied the State's Attorney's motions.

Prior to 1987, only defendants enjoyed a statutory right to substitute judges. Under section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(a)), defendants had an "absolute" right to a substitution of judge upon the timely filing of a written motion alleging that the judge is prejudiced. Upon the proper filing of a section 114—5(a) motion, "the judge lost all power and authority over the case except to enter the orders necessary to effectuate the change." *People v. Peter* (1973), 55 Ill. 2d 443, 457-58.

In addition to section 114—5(a) motions, defendants could also move to have a judge substituted "for cause" under former section 114—5(c) (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(c)). Unlike section 114—5(a) motions, a section 114—5(c) motion would result in substitution only if the defendant could establish the merits of his motion at a hearing. *Peter*, 55 Ill. 2d at 458.

Section 114—5 was amended in 1987 to grant the State the same right to substitute judges that previously had been enjoyed by defendants. (See 84th Ill. Gen. Assem., Senate Proceedings, May 13, 1986, at 106 (statements of Senator Degnan).) The statutory right to substitute a judge "for cause" was changed from section 114—5(c) to section 114—5(d) (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(d)). Section 114—5(d) allows either the State or the defendant to challenge a judge "for cause." In place of the old section 114—5(c), a new paragraph, which is virtually identical to section 114—5(a), was added to allow the State a right to automatically substitute a judge upon the timely filing of a motion alleging that the judge is "prejudiced against the State." (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c).) Because the State's recently created right is similar to the more well-established right enjoyed by defendants, it is helpful, in construing section 114—5(c), to look to this court's prior decisions in cases involving a defendant's right to substitute judges. See *People v. Williams* (1988), 124 Ill. 2d 300, 305.

As stated earlier, the defendant's right to substitute judges has long been interpreted by this court as being an "absolute" right, so long as a written motion alleging prejudice was properly filed within 10 days after the cause had been placed on a judge's trial call. (See *Peter*, 55 Ill. 2d at 457.) Once the motion was timely filed, "[i]t was not proper for the court to inquire into the truth of the allegations of prejudice contained in the [motion]." *Peter*, 55 Ill. 2d at 457-58.

The general rule prohibiting trial judges from evaluating the truth of allegations of prejudice in section 114—5(a) motions was not changed by *People v. Walker* (1988), 119 Ill. 2d 465, 481, where this court recognized that section 114—5(a), "like any other that confers certain rights, may be invoked for purposes not related to

its proper objective." In attempting to give guidance to litigants as to the proper use of section 114—5(a), and therefore curb possible abuses of the statute, this court stated in *Walker* that "[w]e would add that a belief that a judge is likely to rule against a defendant based on either facts or circumstances unrelated to the judge's ability to sit impartially does not afford a proper basis for a claim of prejudice." (*Walker*, 119 Ill. 2d at 482.) We continue to urge parties and attorneys utilizing section 114—5(a), as well as section 114—5(c), to file substitution motions only where there are facts or circumstances which indicate that the judge cannot sit impartially in a particular case. Nevertheless, we still adhere to the general rule that judges cannot inquire into the truth of allegations of prejudice in section 114—5(a) motions. Likewise, judges generally should not assess the truthfulness of allegations of prejudice in section 114—5(c) motions filed by the State.

While we reaffirm the applicability of the general rule regarding judicial inquiry into the substance of substitution-of-judge motions, we also note that this court recently recognized that "although the provisions regarding the substitution of judges are to be liberally construed [citations], abuse of these statutory rights should not go unremedied, and remedies have been found for abuses under the former statute." (*People v. Williams* (1988), 124 Ill. 2d 300, 309.) One remedy was to create an exception to the general rule regarding judicial review of allegations of prejudice. Under this exception, a judge could assess the legitimacy of allegations of prejudice in a substitution motion where there was evidence that the motion was simply an attempt at delaying or avoiding trial. (See *Williams*, 124 Ill. 2d at 309; *Walker*, 119 Ill. 2d at 482; *People v. Beamon* (1962), 24 Ill. 2d 562, 564; *People v. Stewart* (1960), 20 Ill. 2d 387, 391; *People v. Davis* (1957), 10 Ill. 2d 430, 434-35; see

also *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 348.) This court further noted in *Williams*, 124 Ill. 2d at 309, that if abuses of section 114—5(c) by the State "should materialize, the courts or the legislature will deal with these when and as they arise." As we shall explain, this case presents one such abuse of section 114—5(c) which must be dealt with by this court at this time.

The separation of powers clause of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) " '[T]he real thrust of the separation of powers philosophy is that each department of government must be kept free from the control or coercive influence of the other departments.' " (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 175, quoting 1 F. Cooper, State Administrative Law 16 (1965); see also *People v. Flores* (1984), 104 Ill. 2d 40, 48 (quoting the language quoted above from *City of Waukegan*); *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59 (same); *People v. Farr* (1976), 63 Ill. 2d 209, 213 (same).) When members of the legislative or executive branch unduly interfere with a court's exercise of judicial power, this court has the duty to act to preserve the judiciary's independence. See *People v. Joseph* (1986), 113 Ill. 2d 36, 46; *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 18-19.

One aspect of the judiciary's inherent "judicial power" is the power to administer and supervise the court system. (See *Joseph*, 113 Ill. 2d at 42.) Article VI, section 16, of our constitution vests this court with "[g]eneral administrative and supervisory authority over all courts." (Ill. Const. 1970, art. VI, §16.) Subject to this court's authority, the chief judge of each circuit court has "general administrative authority over his court." (Ill. Const. 1970, art. VI, §7.) Where legislation infringes upon the judiciary's administrative authority,

either by directly conflicting with a supreme court rule or by causing more than a "peripheral effect on judicial administration," the legislation violates the separation of powers doctrine. (*People v. Williams* (1988), 124 Ill. 2d 300, 307.) The prohibition on interfering with the judiciary's administrative authority applies to the executive branch as well as to the legislature. See *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 480-81 (stating that the Illinois State Labor Relations Board, an executive agency, cannot "compel chief judges to share their collective-bargaining authority with counties [because] if counties' assertion of funding authority then impeded or frustrated the chief judges' efforts to bargain, the 'whole power' of the chief judges in the vital administrative area of employment relations would be effectively lodged in the counties' hands. This would be far more than a 'peripheral effect' on judicial administration").

Supreme Court Rule 21(b) provides:

> "(b) General Orders. The chief judge of each circuit may enter general orders in the exercise of his general administrative authority, including orders providing for assignment of judges, general or specialized divisions, and times and places of holding court." (107 Ill. 2d R. 21(b).)

This court, in *People v. Williams* (1988), 124 Ill. 2d 300, held that section 114—5(c) does not conflict with Rule 21(b)'s vesting of assignment authority in the chief judge of each circuit court because " '[t]he automatic-substitution-of-judge provision makes clear that its protections may be invoked only *after* assignment is made.' " (Emphasis in original.) (124 Ill. 2d at 306-07, quoting *People v. Walker* (1988), 119 Ill. 2d 465, 477.) This court also found "that section 114—5(c) only peripherally affects the role of the judiciary and therefore does not violate separation of powers." *Williams*, 124 Ill. 2d at 307.

We reaffirm our holding in *Williams* that section 114—5(c) does not constitute an impermissible legislative infringement on the judiciary in violation of the separation of powers doctrine. However, the issue presented by this case is different from that involved in *Williams*. *Williams* involved a single case in which the State's Attorney exercised his right to substitution of judges. Nothing in *Williams* suggests that the State's Attorney was using the statute to interfere with the judiciary's assignment authority.

In this case, however, there is evidence in the record which suggests that the State's Attorney filed the section 114—5(c) motions in the six criminal proceedings before Judge Wharton in an attempt to coerce the chief judge of the circuit court of St. Clair County to reassign Judge Wharton from the felony division of the circuit court to the juvenile division. The State's Attorney admits that, prior to filing the motions for substitution of judge in this case, he had requested that the chief judge reassign Judge Wharton. Furthermore, a memo from the chief judge of the circuit court of St. Clair County to Judge Wharton states:

"In response to your question as to whether or not the State's Attorney requested your reassignment prior to his exercising of his preemptory [*sic*] substitution of judge, the answer is yes. The State's Attorney contacted me informally indicating that for reasons which we did not discuss, he felt compelled to exercise his preemptory [*sic*] right to substitute you as judge in future felony cases. He suggested reassignment as an alternative to a formal Motion for Substitution in the hopes of avoiding any bruised egos. I responded that it would be necessary for him to file the motion."

A second memo from the chief judge to Judge Wharton states:

"[B]ased upon the State's Attorney's representation that he will continue to substitute you in felony matters, I will

therefore not assign any new felony cases to you. Given the State's Attorney's recent exercise of his preemptory [*sic*] substitution of judge, such assignments in the future would appear to be futile and create unnecessary administrative and logistical problems."

These memos suggest that the State's Attorney (who, in acting as prosecutor, was acting as a member of the executive branch (see *Ingemunson v. Hedges* (1990), 133 Ill. 2d 364, 370)) used section 114—5(c) as a coercive tool to thwart the chief judge's independent exercise of his assignment authority.

Unlike in *Williams*, 124 Ill. 2d at 307, where the State's Attorney's use of a section 114—5(c) motion in a single case could not be said to have anything more than a "peripheral effect on judicial administration," the State's Attorney's blanket use of substitution motions in all felony proceedings before Judge Wharton, when viewed in conjunction with his earlier attempts at having Judge Wharton reassigned, poses a substantial threat to the dignity and independence of the judiciary.

As we have already discussed, where the independence of the judiciary is endangered by encroachment from the other branches of government, this court has a duty to act. (See *People v. Joseph* (1986), 113 Ill. 2d 36, 46; *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 18-19.) Generally, this court exercises its duty to protect the judiciary by declaring the statute causing the encroachment unconstitutional (see *Joseph*, 113 Ill. 2d at 48), or by interpreting ambiguous statutory language in a manner which avoids constitutional problems (see *People v. Flores* (1984), 104 Ill. 2d 40, 50). In this case, however, section 114—5(c) is constitutional, and its provisions are unambiguous: The State has an absolute right to one substitution of judge upon the timely filing of a written motion alleging that the "judge is prejudiced against the

State." (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c).) Nevertheless, this court is not powerless to act.

The right to a substitution of judge provided by section 114—5(c) is similar to the State's right to peremptorily challenge venirepersons (see Ill. Rev. Stat. 1987, ch. 38, par. 115—4(e)). In fact, the automatic right to a substitution of judge based upon an allegation of prejudice has been called a right to peremptorily challenge a judge. (See *Channel Flying, Inc. v. Bernhardt* (Alaska 1969), 451 P.2d 570, 574.) Such terminology is somewhat misleading in that a party exercising a peremptory challenge need not state a reason for its exercise of the challenge (see Black's Law Dictionary 1023 (5th ed. 1979)), while a party seeking to substitute a judge under section 114—5(c) must allege that the reason for the substitution is that the judge is "prejudiced" (see Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c)). (See *State v. Holmes* (1982), 106 Wis. 2d 31, 35 n.2, 315 N.W.2d 703, 705 n.2.) The rights are similar, however, because in both instances, the basis for removing the person involved (either the judge's prejudice or the venireperson's perceived shortcomings) generally is not subject to judicial scrutiny. Furthermore, neither the State's right to substitute judges under section 114—5(c) nor the State's right to peremptorily challenge venirepersons is unconstitutional. See *Williams*, 124 Ill. 2d at 307 (upholding constitutionality of section 114—5(c)); *Hayes v. Missouri* (1887), 120 U.S. 68, 72, 30 L. Ed. 578, 580, 7 S. Ct. 350, 352 (upholding constitutionality of Missouri statute granting the State the right to exercise peremptory challenges); see also *Batson v. Kentucky* (1986), 476 U.S. 79, 99 n.22, 90 L. Ed. 2d 69, 89 n.22, 106 S. Ct. 1712, 1724 n.22 (rejecting view set forth in Justice Marshall's concurring opinion in *Batson* that peremptory challenges should be abolished to protect the defendant's constitutional right to a fair trial).

Although the exercise of peremptory challenges to venirepersons is generally not subject to judicial scrutiny, there is one exception. Where a defendant can make a *prima facie* showing that a prosecutor unconstitutionally exercised peremptory challenges to purposefully discriminate against minority venirepersons, the prosecutor must provide the trial court with a race-neutral explanation for why the prosecutor exercised each of the challenges. (*Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) The procedure for scrutinizing peremptory challenges set forth in *Batson* represents an effort by the Supreme Court to rectify (and prevent) the unconstitutional use of a constitutional statute (*i.e.*, the use of a statutory right to exercise peremptory challenges for the purpose of discriminating against minorities). In response to the possibility that section 114—5(c) may be used by the State for unconstitutional purposes, we similarly find it necessary to adopt a procedure to be used in assessing a State's use of section 114—5(c) motions where it appears that such motions are being used to thwart the chief judge of a circuit court's exercise of independent assignment authority.

The procedure we adopt in this case is patterned after the procedure implicit in this court's prior decisions which hold that a defendant's motion for substitution-of-judge may be denied where it is apparent that the sole purpose of the motion is to delay trial (see *People v. Beamon* (1962), 24 Ill. 2d 562, 564; *People v. Stewart* (1960), 20 Ill. 2d 387, 391; *People v. Davis* (1957), 10 Ill. 2d 430, 434-35; see also *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 348); as well as the procedure set forth by the Supreme Court in *Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, for assessing the State's use of peremptory challenges on minority venirepersons.

The exception to the general rule regarding judicial review of allegations of prejudice contained in substitu-

tion-of-judge motions provides that "where it appears that the petitioner has by motions for continuances or other conduct attempted to delay or avoid trial prior to his motion for [substitution of judge], the trial court can inquire into the good faith of the petitioner's motion." (*Hoffmann*, 40 Ill. 2d at 348 (reviewing motion filed in civil case for substitution of judge but citing criminal cases involving substitution motions).) If, after inquiring into the good faith of the motion, there appears to be no basis for the allegations of prejudice, the motion should be denied. See *Stewart*, 20 Ill. 2d at 392.

A procedure for reviewing substitution motions is implicitly set forth in this court's decisions which recognize the exception to the general rule: Where there is *prima facie* evidence that a substitution-of-judge motion has been filed merely to delay or avoid trial, the trial judge can inquire into the basis of the allegations of prejudice. (See *Hoffmann*, 40 Ill. 2d at 348 (and cases cited therein).) The movant then has the burden of substantiating his allegations of prejudice. (See *Stewart*, 20 Ill. 2d at 392.) If, however, there is no evidence that the purpose of the motion was to cause delay, the trial judge cannot inquire into the good faith of the allegations of prejudice. (See *People v. Mosley* (1962), 24 Ill. 2d 565, 569.) This procedure is similar to the procedure set forth by the Supreme Court in *Batson* for reviewing the State's use of peremptory challenges on minority venirepersons.

In light of these prior decisions, we find that the following procedure is appropriate for reviewing whether a prosecutor's use of section 114—5(c) violates the separation of powers doctrine. First, the trial judge must determine whether there is *prima facie* evidence that the motions are being used in an effort to thwart the chief judge of the circuit court's independence in assigning cases to the judges in his circuit. Among the factors that

may be considered in making a *prima facie* determination are whether the State's Attorney's office has used, and indicates that it plans to continue using, section 114—5(c) motions on a blanket basis in almost every case assigned to the judge; whether the State's Attorney's office has made other attempts besides use of section 114—5(c) motions to have the judge reassigned (such as directly contacting the chief judge and requesting reassignment); whether members of the State's Attorney's office have made statements reflecting a desire that the judge be reassigned; and any other evidence that indicates that the section 114—5(c) motions are being used for the purpose of influencing the chief judge in his assignment decisions.

If the trial judge determines that a *prima facie* case does not exist, the section 114—5(c) motion must be granted. If a *prima facie* case is found to exist, a hearing shall be conducted as soon as possible before a judge other than the judge named in the motion. (See Ill. Rev. Stat. 1987, ch. 38, par. 114—5(d).) At the hearing, the prosecutor must explain the basis for his allegation that the judge is prejudiced against the State. The judge named in the motion need not testify at the hearing, but he may submit an affidavit if he wishes. (See Ill. Rev. Stat. 1987, ch. 38, par. 114—5(d).) The mere fact that the judge has ruled against the State in the past is not sufficient grounds to support a claim of prejudice. (See *People v. Taylor* (1984), 101 Ill. 2d 508, 518; *People v. Vance* (1979), 76 Ill. 2d 171, 178-81.) The prosecutor need not prove that the judge is, in fact, prejudiced. Instead, the prosecutor must demonstrate that there are facts or circumstances related to the particular case at hand which indicate that the judge is prejudiced. If the existence of such facts or circumstances can be demonstrated, the section 114—5(c) motion must be granted and the case reassigned to a judge other than the judge

named in the motion. If the existence of such facts and circumstances cannot be demonstrated, the section 114—5(c) motion should be denied and the case reassigned to the judge named in the motion.

When the above procedure is followed, it is possible that facts and circumstances may be demonstrated to exist which indicate that the judge involved will be prejudiced against the State in all future criminal cases (or in all future criminal cases of a certain type). If such facts or circumstances are established, the chief judge of the circuit court involved, in the exercise of his assignment authority, may of course transfer the prejudiced judge to a different branch of the circuit court.

Turning now to the instant case, we note that Judge Wharton denied the State's Attorney's section 114—5(c) motions after Judge Wharton found that the motions were filed for the purpose of influencing the chief judge of the circuit court of St. Clair County in his assignment of cases to judges. As our opinion in this case indicates, such a finding only constitutes a *prima facie* case of unconstitutional conduct. The State's Attorney is still entitled to a hearing before a judge other than Judge Wharton at which the State's Attorney can explain the basis for his claims of prejudice in each of the six cases before Judge Wharton.

For the reasons stated above, the motion for a supervisory order directing Judge Wharton to grant the State's Attorney's section 114—5(c) motions in the six criminal proceedings below is denied. However, in the exercise of our supervisory jurisdiction, we direct that in each of the six cases, the chief judge of the circuit court of St. Clair County assign a judge other than Judge Wharton to conduct a hearing in accordance with this opinion. In each individual case, the judge at the hearing shall determine whether there is support for the State's Attorney's allegation of prejudice. If the judge in the in-

dividual case concludes that there is no basis to the State's Attorney's allegation of prejudice, then Judge Wharton's order in that case denying the section 114—5(c) motion shall stand and the case shall be transferred back to Judge Wharton. If, however, the judge in the individual case finds that there is a basis for the State's Attorney's allegations of prejudice, Judge Wharton's order denying the section 114—5(c) motion shall be vacated and the case reassigned to a judge other than Judge Wharton.

*Supervisory order entered.*