(No. 87204.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LUIS RUIZ, Appellee.

*Opinion filed October 26, 2000.—Rehearing denied January 29, 2001.*

HARRISON, C.J., dissenting.
HEIPLE, J., joined by RATHJE, J., also dissenting.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb and Marie Quinlivan Czech, Assistant State's Attorneys, of counsel), for the People.

Richard H. McLeese, of Thomas D. Decker & Associates, Ltd., of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:
This appeal is brought by the State from an order of the circuit court of Cook County granting a motion by the defendant, Luis Ruiz, to preclude the State from seeking the death penalty in the present case. The matter was before the circuit court for a new sentencing hearing, ordered as post-conviction relief. The trial judge concluded that sentencing the defendant to death would be disproportionate to the sentences of natural life imprisonment received by a codefendant, Placido LaBoy,

for the same set of offenses. For the reasons that follow, we reverse the order of the circuit court and remand the cause for further proceedings.

The present case has a lengthy procedural history, but the major features require only brief recitation. The defendant was originally convicted in a jury trial in 1980 of three counts of murder, three counts of armed violence, and three counts of unlawful restraint for his role in the deaths of three youths who were members of a rival street gang. The defendant waived a jury for purposes of a capital sentencing hearing, and, following a hearing, the trial judge sentenced the defendant to death for the murder convictions. On direct appeal, this court affirmed the defendant's convictions and death sentence. *People v. Ruiz*, 94 Ill. 2d 245 (1982).

In our initial opinion in this case, the court rejected the defendant's contention that he could not be sentenced to death because he was guilty of these offenses only under an accountability theory. The court explained:

"It was Ruiz who first deceived the three victims by telling them that he was a Latin Eagle when they bragged to him that they had participated in a 'hit' on some Latin Queens. It was Ruiz who directed that they all get into the victims' car and drive to the first alley. Ruiz took Michael [Salcido] down the alley and participated in beating him to the ground. Ruiz told the assistant State's Attorney that his companions said that they would have to kill the three boys. After learning this, when they stopped in the second alley, Ruiz did not depart but stayed while each of the three was systematically and ruthlessly executed. Arthur Salcido was stabbed a total of eight times in the chest, and his throat was cut completely across, severing his windpipe, as well as the major arteries on either side of his neck. Frank Mussa was stabbed a total of 21 times: three times in the neck, three times in the chest and 15 times in the back. Michael Salcido was stabbed a total of 18 times: 10 times in the face and neck, five times in the abdomen and three times in the back. Ruiz never told either Lopez or the assistant State's Attorney that he protested while all of these

blows were being struck. In fact, nothing in the record shows what he was doing during the considerable time that it took to perform these acts, which must have been accomplished in the face of extreme effort on the part of the victims to preserve themselves and through greater efforts on the parts of the participants to overcome the victims' defenses. In any event, when all was finished, Ruiz assisted the others in wiping the car free of fingerprints and then walked away from the scene with his companions." *Ruiz*, 94 Ill. 2d at 264-65.

After this court affirmed the defendant's convictions and death sentence, the United States Supreme Court denied the defendant's petition for a writ of *certiorari*. *Ruiz v. Illinois*, 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465 (1983). The defendant then commenced post-conviction proceedings, and the case was assigned to the same judge who had presided at trial. The judge dismissed the petition without an evidentiary hearing. On appeal, this court held that section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8) required that the cause, as a post-conviction matter, be assigned to a judge other than the defendant's trial judge. *People v. Ruiz*, 107 Ill. 2d 19 (1985). On remand, the case was reassigned to a different judge, who later denied post-conviction relief without an evidentiary hearing. The defendant appealed from that ruling, and this court affirmed in part and reversed in part, ordering an evidentiary hearing on allegations in the petition challenging counsel's effectiveness at the capital sentencing hearing. *People v. Ruiz*, 132 Ill. 2d 1 (1989). The United States Supreme Court later denied the defendant's petition for a writ of *certiorari*. *Ruiz v. Illinois*, 496 U.S. 931, 110 L. Ed. 2d 652, 110 S. Ct. 2632 (1990). Following an evidentiary hearing on the allegations of ineffective assistance, the circuit court granted relief to the defendant on that portion of the post-conviction petition and vacated the defendant's death sentence, finding that trial counsel had rendered ineffec-

tive assistance at the sentencing hearing. The State appealed from that judgment, and this court affirmed the order granting the defendant a new sentencing hearing. *People v. Ruiz*, 177 Ill. 2d 368 (1997). The cause was then remanded to the circuit court for resentencing.

The present appeal arises from an order entered by the circuit court after the latest remand. Prior to the holding of a new sentencing hearing, the defendant moved to bar entry of the death penalty in this case. The defendant argued, among other things, that sentencing him to death would be disproportionate to the three consecutive sentences of natural life imprisonment imposed on a codefendant, Placido LaBoy, for the same offenses. LaBoy had received those sentences after a jury was unable to agree to impose the death penalty in his case. See *People v. Caballero*, 179 Ill. 2d 205, 212 (1997). We note here the sentences given to the two other offenders involved in these crimes. A second codefendant, Juan Caballero, received the death penalty for these offenses. Caballero's case is currently before the circuit court for an evidentiary hearing on a claim similar to the one involved here, but raised in the context of a post-conviction proceeding, that his death sentence is disproportionate to LaBoy's natural life sentences. A third codefendant, Nelson Aviles, reached a plea agreement with the State under which Aviles testified against LaBoy at LaBoy's trial, pleaded guilty to these offenses, and received concurrent sentences of 40 years' imprisonment for the three murders.

In the proceedings below, the trial judge granted the defendant's motion to preclude a death penalty hearing, concluding that the death penalty should not be a possible sentence in this case because it would be disproportionate to LaBoy's sentences. In reaching this result, the judge found that the defendant was less culpable than LaBoy in these offenses and that the defendant's pros-

pects for rehabilitation were as good as or better than LaBoy's. The State brings the present appeal from that ruling.

We are met at the outset with a challenge to our jurisdiction. The defendant has moved to dismiss the present appeal, and we ordered the motion taken with the case. The defendant argues that nothing in our rules on appeals in criminal cases authorizes the State to bring the present appeal, and he believes that the present appeal must therefore be dismissed. The State, in response, asserts that the order entered by the circuit court in this case is similar to one that halts a criminal proceeding in the defendant's favor on grounds that prevent the State from prosecuting the defendant. The State thus believes that it should be allowed to proceed with the appeal under Supreme Court Rules 603 and 604(a)(1) (134 Ill. 2d R. 603; 145 Ill. 2d R. 604(a)(1)).

We agree with the defendant that the present appeal does not readily fit within the range of State appeals authorized by our rules. No rule expressly permits the State to bring an appeal from an order like the one entered here. Nonetheless, we believe that it is appropriate to consider the present appeal on its merits. We note that the State could have attempted to obtain review of the challenged order through a motion for a supervisory order, pursuant to Supreme Court Rule 383 (155 Ill. 2d R. 383), invoking our general supervisory authority over the courts of the state (Ill. Const. 1970, art. VI, § 16). Contrary to the view expressed by Chief Justice Harrison in his dissent, this court has previously allowed supervisory relief in a number of criminal cases. *People ex rel. Baricevic v. Wharton*, 136 Ill. 2d 423 (1990); *People ex rel. Daley v. Suria*, 112 Ill. 2d 26 (1986); *People ex rel. Ward v. Moran*, 54 Ill. 2d 552 (1973); see also *Doherty v. Caisley*, 104 Ill. 2d 72 (1984) (supervisory order entered directing circuit judge to vacate orders appointing public

defender of different county to represent two inmates in civil actions relating to computation of sentence and denial of parole). And when supervisory orders have been denied, the court has done so without suggesting that supervisory relief is never available in criminal cases. *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209 (1988); *People ex rel. Daley v. Fitzgerald*, 123 Ill. 2d 175 (1988); *People ex rel. Foreman v. Nash*, 118 Ill. 2d 90 (1987). Given the general importance of the issue presented to the development of our law, we consider it appropriate to exercise our supervisory authority in this case and address the merits of the State's appeal. Notably, dismissing the appeal would effectively bar the State from ever seeking the death penalty against the defendant for these offenses, for the State could not later appeal the entry of a noncapital sentence. We now turn to a consideration of the merits of the question presented here.

The State argues that the trial court erred in granting the defendant's motion to preclude a death sentence here. We agree. We believe that the trial court acted prematurely in attempting to determine whether a sentence of death imposed in this case would be disproportionate to the noncapital sentences imposed on a codefendant.

Our cases have consistently held that evidence of a codefendant's sentence is irrelevant and thus inadmissible at a capital sentencing hearing. In *People v. Emerson*, 189 Ill. 2d 436 (2000), this court recently considered whether a defendant was entitled to present, at the second stage of a capital sentencing hearing, evidence of a codefendant's sentence. This court concluded that the trial judge in that case acted properly in barring introduction to the evidence. The court explained:

"It is well established by the precedent of this court that a defendant does not have a right to present evidence of a codefendant's sentence at the aggravation-mitigation stage of sentencing. See, *e.g.*, *People v. Jackson*, 182 Ill. 2d

30, 54 (1998). As we explained in *People v. Page*, 156 Ill. 2d 258, 271-72 (1993), evidence of a codefendant's sentence is not a relevant mitigating factor at the aggravation-mitigation stage, where the focus is on the defendant's character and participation in the offense. '[R]equiring the sentencer to examine and compare the relative culpability of the defendants and the circumstances in aggravation and mitigation applicable to each would unnecessarily complicate an already difficult task.' *Page*, 156 Ill. 2d at 272. Thus, while a reviewing court may consider whether a defendant's sentence is disparate when compared to a codefendant's sentence, a defendant does not have a right to present the sentencing jury with evidence of a codefendant's sentence. *Jackson*, 182 Ill. 2d at 92. Based on this authority, we hold that the circuit court did not err in excluding evidence of Jackson's sentence." *Emerson*, 189 Ill. 2d at 501.

In *People v. Page*, 156 Ill. 2d 258 (1993), this court declined to follow a Florida case that permitted capital sentencers to consider sentences given to codefendants. In addition to the concerns mentioned by the court in *Emerson*, the *Page* court explained:

"As this court stated in [*People v. Perez*, 108 Ill. 2d 70 (1985)], 'the fact that a separate jury found there were mitigating factors sufficient to preclude the imposition of the death penalty as to [a codefendant] does not mean that we must set aside the jury's determination in the present case that as to [defendant] there was no mitigating factor or factors sufficient to preclude its imposition.' *Perez*, 108 Ill. 2d at 93." *Page*, 156 Ill. 2d at 272.

We believe that the considerations discussed above are applicable in the present case and lead to the conclusion that the circuit court erred in considering the defendant's sentencing-disparity motion. Just as evidence of a codefendant's sentence is irrelevant at a capital sentencing hearing and may not be introduced at that stage in the proceedings, that evidence is equally irrelevant prior to the sentencing hearing. If, in fact, a sentence of death is excessive or disproportionate, this

court on direct review, or this court or the circuit court in a post-conviction proceeding, may consider that issue. Although comparative proportionality review is not required by the United States Constitution and is not a feature of the Illinois death penalty statute, this court will consider claims that a sentence of death in a particular case is disproportionate to the sentence imposed on a codefendant. See, *e.g.*, *People v. Erickson*, 117 Ill. 2d 271, 302-03 (1987).

Opposing this result, the defendant argues that preventing the trial judge from considering the merits of his sentencing-disparity motion would place him in a worse position with regard to this issue than he would occupy if he had not obtained post-conviction relief. The defendant observes that if he had not been awarded a new sentencing hearing, he could raise the sentencing-disparity issue as a post-conviction claim, as his codefendant Caballero has done. See *People v. Caballero*, 179 Ill. 2d 205 (1997). To refuse to consider the same issue at this juncture, the defendant believes, means that he would have been better off, at least with respect to this issue, by not winning a new sentencing hearing. We do not agree. Unlike Caballero, the defendant is not now facing a death penalty. If the sentencer at the new hearing decides to impose the death penalty against the defendant, the defendant may then pursue the sentencing-disparity claim that he wants to present now.

The defendant also contends that allowing a trial judge to consider the merits of a sentencing-disparity claim prior to a capital sentencing hearing is the more efficient procedure and can only save time and resources. We believe, however, that the suggested procedure could also lead to needless duplication in many cases. Allowing a judge to consider a claim like the defendant's prior to any capital sentencing hearing would require the parties to engage in two similar proceedings, at least in those

cases in which the motion proved to be unsuccessful: first, a full-blown evidentiary hearing, complete with testimony about the defendant's culpability and rehabilitative prospects, and second, a capital sentencing hearing, at which the same evidence about the defendant would be introduced. Rather than save time and resources, the defendant's suggested procedure would, in many cases, cause the parties to present their evidence twice.

Nor do we believe that this court's decision in a codefendant's case, *People v. Caballero*, 179 Ill. 2d 205 (1997), compels a different result here. The defendant argues that *Caballero* authorizes the circuit courts to entertain motions that seek to bar imposition of the death penalty on the ground that a sentence of death would be disproportionate to a noncapital sentence imposed on a codefendant. We do not agree. *Caballero* determined only that it is within the competence of a circuit court to consider whether the death sentence imposed on a post-conviction petitioner is disproportionate to the noncapital sentence received by a codefendant for the same offense. The court in that case rejected the State's argument that a sentencing-disparity issue may be decided only by a reviewing court. *Caballero* did not determine, however, that such issues may properly be decided by the circuit court prior to the holding of a capital sentencing hearing, which is the context in which the question arises here. The court in *Caballero* found distinguishable this court's earlier decisions in *People v. Page*, 156 Ill. 2d 258 (1993), and *People v. Edgeston*, 157 Ill. 2d 201 (1993), which had held that evidence of a codefendant's sentence is irrelevant and inadmissible at a capital sentencing hearing. *Caballero* explained:

> "Neither *Page* nor *Edgeston* dealt with the sentence disparity issue in the context of a petition for post-conviction relief, nor did they hold that a circuit court could not consider such an issue raised under the [Post-

Conviction Hearing] Act. Disparity of sentence is cognizable under the Act in noncapital cases (see *People v. Wren*, 223 Ill. App. 3d 722, 729 (1992)), and where circuit courts routinely handle post-conviction petitions in capital cases, we see no reason to preclude examination of this issue. Thus, we agree with defendant that the circuit court erroneously believed the issue was 'a matter for appellate review' only." *Caballero*, 179 Ill. 2d at 215.

We do not believe that *Caballero* altered the longstanding rule prohibiting introduction, at a capital sentencing hearing, of evidence of a codefendant's sentence. *Emerson*, decided after *Caballero*, reaffirmed the earlier case law and demonstrates that the rule expressed in those opinions is still valid.

Finally, we note that we do not decide here whether or not a sentence of death in this case would be disproportionate to any of the sentences imposed on the defendant's codefendants. We determine only that the trial judge should not foreclose a sentence of death against the defendant at this time. As the defendant has not yet been resentenced for these offenses, it would be premature to compare a sentence of death in his case with the sentences received by LaBoy. The defendant's original capital sentencing hearing was conducted in 1980. The defendant has not yet been resentenced, so we cannot be fully aware of what additional evidence might now be presented in aggravation and mitigation. In support of the motion to bar a capital sentence in this case, the defendant argues that he has been a model prisoner and that his adjustment to prison life demonstrates his excellent prospects for rehabilitation. These are fact-based questions, however, and we believe that it would be premature to attempt to address them at this point in the proceedings, notwithstanding the defendant's offer of evidence on these matters.

For the reasons stated, the judgment of the circuit

court of Cook County is reversed, and the cause is remanded to that court for further proceedings.

*Reversed and remanded.*

CHIEF JUSTICE HARRISON, dissenting:

This appeal is unlawful and should be dismissed. Contrary to the majority's suggestion, the State could not have obtained review of the circuit court's order by means of a supervisory order. Under article VI, section 16, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 16), this court's supervisory authority must be exercised "in accordance with [the court's] rules." This is a criminal case, and our rules specifically provide that the only method of review in a criminal case is by appeal. 134 Ill. 2d R. 602.

Whether the State may appeal a nonfinal order entered by the circuit court in a criminal case is determined exclusively by Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)). *People v. Truitt*, 175 Ill. 2d 148, 151 (1997). Under Rule 604(a)(1), the circumstances under which the State may prosecute an appeal are narrowly circumscribed. The rule clearly provides:

"In criminal cases the State may appeal *only* from an order or judgment the substantial effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." (Emphasis added.) 145 Ill. 2d R. 604(a)(1).

There is no dispute that the order at issue in this case, which merely precludes the State from seeking a particular sentence, does not fall within any of these categories. Where, as here, an appeal by the State does not fall within any of the provisions of our Rule 604(a)(1), the State has no right to appeal the order to this or any court of review. The State's appeal must therefore be dismissed for lack of jurisdiction. *Truitt*, 175 Ill. 2d at 153.

The authorities cited in the majority's opinion (194 Ill. 2d at 459) do not alter this conclusion. Unlike the present case, *People ex rel. Ward v. Moran*, 54 Ill. 2d 552 (1973), did not involve an appeal by the State from the circuit court's judgment. It involved a challenge to a judgment entered by the appellate court following an appeal by the defendant. *People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 37-38 (1986), stated that our court may exercise its supervisory authority to intervene in a case where the circuit court has exceeded its authority and impermissibly exercised powers belonging to the executive branch, but those circumstances are not present here. *Doherty v. Caisley*, 104 Ill. 2d 72, 79 (1984), was not a criminal case. At issue there was whether the circuit court of one county exceeded its authority when it appointed the public defender of another county to represent two inmates confined in a state penal institution in civil actions the inmates had brought. Although *People ex rel. Baricevic v. Wharton*, 136 Ill. 2d 423 (1990), did arise from criminal proceedings, it was not a direct appeal by the State. It was an original action brought in our court to challenge the way in which a circuit court judge had been interpreting and applying the substitution of judge provisions in section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c)). The propriety of our jurisdiction to rule on that matter was not raised by the parties or addressed by this court.

Even if we had jurisdiction to consider the State's appeal, which we do not, I still could not join in the result reached by the majority. There are no circumstances in which the State should be allowed to seek the death penalty. For the reasons set forth in my partial concurrence and partial dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, sec-

tion 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). It is therefore void and unenforceable.

JUSTICE HEIPLE, also dissenting:

I fully agree with Chief Justice Harrison that this court has no jurisdiction to hear this appeal and therefore join in that portion of his dissent which addresses this issue.

JUSTICE RATHJE joins in this dissent.