958 F.2d 1419
 Marjane WARREN, Plaintiff-Appellant,
v.
Randolph STONE, the Public Defender, Paul Biebel, Jr.,
individually and in his official capacity, the ex-Public
Defender, Harry G. Comerford, Chief Judge, individually and
in his official capacity as Chief Judge of the Circuit Court
of Cook County and County of Cook, Defendants-Appellees.
Mary BURMEISTER, Plaintiff-Appellant,
v.
Randolph N. STONE, individually and in his official capacity
as Public Defender, Paul Biebel, Jr., ex-Public Defender,
individually and in his official capacity, and Harry G.
Comerford, individually and in his official capacity as
Chief Judge of the Circuit Court of Cook County, et al.,
Defendants-Appellees.
 Nos. 90-3828, 90-3829.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 13, 1991.
Decided March 20, 1992.
 
 Stuart K. Jones (argued), Chicago, Ill., for plaintiff-appellant in No. 90-3828.
 Denise M. Mercherson, Connie R. Barba (argued), Jane L. Stuart, Connie R. Barba, Office of the State's Atty. of Cook County, Chicago, Ill., for defendants-appellees in No. 90-3828.
 Stuart K. Jones (argued), Chicago, Ill., for plaintiff-appellant in No. 90-3829.
 Denise M. Mercherson, Connie R. Barba (argued), Office of the State's Atty. of Cook County, Chicago, Ill., for defendants-appellees in No. 90-3829.
 Before WOOD, Jr.,* COFFEY and MANION, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs Marjane Warren and Mary Burmeister worked in the Cook County Public Defender's Office. When they were demoted or terminated because of alleged violations of office procedure they filed separate suits under 42 U.S.C. § 1983 claiming, inter alia, they were denied property rights without due process. The respective district courts found that plaintiffs were not county employees but state employees who were not entitled to a hearing. Both judges dismissed the federal claim for failure to state a claim and the pendent state claims without prejudice. 751 F.Supp. 759 and 751 F.Supp. 1302. Plaintiffs appeal and we affirm.[1]
 
 I.
 
 2
 The two cases before us present similar facts. For purposes of review of a motion to dismiss, we accept the facts set forth in the complaints as true and make all reasonable inferences in favor of the plaintiffs. Johnson v. Martin, 943 F.2d 15, 16 (7th Cir.1991). Warren was an employee of the Cook County Public Defender's Office (PDO), and Burmeister was her supervisor. As alleged, in October 1987, both employees were wrongfully accused of destroying personnel records in violation of federal law by the interim Public Defender, defendant Paul Biebel. Biebel further accused Burmeister of making unauthorized changes in the PDO budget request, favoring some office employees, and breaking into Bob Gevirtz's office. All of the charges were untrue. Neither employee was given a hearing to respond to the accusations, and both were suspended indefinitely without pay.
 
 
 3
 Soon thereafter, Biebel took further action against Warren by transferring her to a far less desirable position in night bond court, despite the recommendation of her doctor that such a transfer could injure her health. In the letter of transfer, Biebel warned her that failure to report to the new position would lead to termination. Warren alleges that the effect of this letter was to constructively discharge her since she felt compelled by her health and her doctor not to report to night bond court. Ultimately, defendant Randolph Stone, who by then had assumed the position of the Public Defender, discharged her.
 
 
 4
 As a direct result of the charges against Burmeister, Biebel transferred her to a low-level receptionist position. Several months later, Stone officially demoted Burmeister to the position of receptionist, with a cut in salary of approximately $15,000 per year.
 
 
 5
 Both plaintiffs allege that the officials responsible for the disciplinary actions acted wholly outside the scope of the Cook County Rules and Regulations Governing Employee Conduct. They allege that they were county employees, and as such any disciplinary proceedings against them should have been conducted in compliance with the county personnel policy. Since the defendants failed to comport with this progressive disciplinary policy, the plaintiffs argue they have been denied the property interests they had in their jobs without due process of law. The defendants assert that Warren and Burmeister were state, not county, employees, and thus the personnel policy on which the plaintiffs base their claims is inapplicable.
 
 II.
 
 6
 As a prerequisite to establishing a due process violation, plaintiffs must first establish a property right to their respective jobs. Wolf v. Larson, 897 F.2d 1409, 1411 (7th Cir.1990). Property interests for purposes of the Fourteenth Amendment "are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The plaintiffs allege that the Cook County employment policy created a property interest in their jobs. If they are not county employees, however, they cannot rely on the county policy, and their complaints would be insufficient to state a section 1983 cause of action.
 
 
 7
 For the most part, Illinois statutes are not helpful in determining the employment status of the plaintiffs. The Illinois legislature has enacted no specific provision which clearly designates the county or the state as the employer of the staff of the PDO.[2] Nonetheless, the plaintiffs point out that the Illinois statute authorizing the appointment of the Public Defender's staff does provide some support for treating them as county employees. This statute provides:
 
 
 8
 Assistants. The Public Defender shall have power to appoint, in such manner as the judges before mentioned shall direct, such number of assistants, all duly licensed practitioners, as such judges shall deem necessary for the proper discharge of the duties of the office, who shall serve at the pleasure of the Public Defender. He shall also, in like manner, appoint such number of clerks and other employees as may be necessary for the due transaction of the business of the office. The compensation of such assistants, clerks and employees shall be fixed by the County Board and paid out of the county treasury.
 
 
 9
 Ill.Rev.Stat. ch. 34, § 3-4008 (1989) (amended by 1991 Ill.Legis.Serv. 111 (West)) (emphasis added). The "at the pleasure of" language was left out of the provisions governing "clerks and other employees." Plaintiffs surmise that this omission could indicate that county termination procedures are to apply to these employees. However, that is not the only reasonable interpretation. The omission may simply be an oversight by the legislature, or it may mean that the legislature is delegating to the Public Defender the responsibility for formulating some sort of disciplinary policy for his "clerks and other employees." Speculation aside, the statutory language at the time of the alleged violation is inconclusive as to state or county employee status, and the legislative history of the statute then in force is not helpful.[3]
 
 
 10
 The plaintiffs further argue that since by statute the Public Defender's staff is paid by the county and receives county benefits, this should be indicative of county employee status. This may be a logical argument were we to start with a clean slate. But the Illinois courts have already spoken. The Illinois Supreme Court has determined that funding is not conclusive as to state or county employee status. Drury v. County of McLean, 89 Ill.2d 417, 60 Ill.Dec. 624, 627, 433 N.E.2d 666, 669 (1982) ("The fact that counties pay the salaries and expenses of circuit court clerks does not make the office of circuit court clerk a county office."). Recently, in Orenic v. State Labor Relations Bd., 127 Ill.2d 453, 130 Ill.Dec. 455, 466, 537 N.E.2d 784, 795 (1989), the Illinois Supreme Court held:
 
 
 11
 [t]he fact that a county pays the salaries of other nonjudicial employees in the judicial branch, or even administers personnel policies covering them by agreement with the judicial branch, does not in constitutional or statutory terms make the county their employer....
 
 
 12
 The constitutional tripartite separation of powers strengthens our conclusion that the State, not a county, is the sole employer of all court employees.
 
 
 13
 See also Baker v. DuPage County, 703 F.Supp. 735, 737 (N.D.Ill.1989) (circuit court legal secretary held to be state employee regardless of the fact her paycheck came from the county). Moreover, compensation of nonjudicial court employees can be subject to the ultimate control of the judiciary through its inherent power to compel payment of the funds necessary for the efficient and effective operation of the judicial branch. See People ex rel. Bier v. Scholz, 77 Ill.2d 12, 31 Ill.Dec. 780, 782-83, 394 N.E.2d 1157, 1159-60 (1979).
 
 
 14
 Although the Illinois courts have not yet addressed the specific issue of a PDO employee's status for purposes of section 1983 liability, Illinois case law does provide strong guidance. In Orenic, 130 Ill.Dec. 455, 537 N.E.2d 784, the Illinois Supreme Court addressed whether counties may be considered joint employers of state circuit courts' nonjudicial employees for purposes of collective bargaining under the Illinois Public Labor Relations Act. The status of assistant public defenders was explicitly at issue. The court held that "the State, personified by the chief judge of each circuit, is their employer." Id., 130 Ill.Dec. at 466, 537 N.E.2d at 795. The role of counties is limited:
 
 
 15
 Except for setting and paying salaries and providing facilities subject to ultimate court power, the counties are entitled to no other role in regard to the courts' nonjudicial employees that might arguably be considered the role of a joint employer.
 
 
 16
 Id., 130 Ill.Dec. at 468, 537 N.E.2d at 797. The court explained that such a result was mandated by the Illinois Constitution which "contemplates '[o]nly one unified court system operating statewide' and 'does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity.' " Id. (quoting Ampersand, Inc. v. Finley, 61 Ill.2d 537, 338 N.E.2d 15, 18 (1975)). Treating the counties as joint employers would pose a severe separation of powers problem, "unduly trench[ing] on the judicial branch's separate and equal status." Orenic, 130 Ill.Dec. at 470, 537 N.E.2d at 799.
 
 
 17
 The plaintiffs attempt to distinguish Orenic by focusing on the separation of powers issue. They assert that the Orenic court had no alternative but to refuse to recognize the counties as joint employers in the collective bargaining context because of significant potential interference with the judiciary's autonomy. By contrast, they maintain, there is no such threat of interference in the present case. Rather, they explain that acknowledging the county as employer for disciplinary proceedings has only a "peripheral impact" on the judiciary, and the Orenic court recognized that "legislation may permissibly have a peripheral effect on judicial administration." Id., 130 Ill.Dec. at 468, 537 N.E.2d at 797. The plaintiffs contend that Orenic represents a narrow holding, and that it should be confined to collective bargaining under state labor law.
 
 
 18
 Orenic has broader impact than the plaintiffs would like to think.[4] But even if we accepted the plaintiffs' contention that PDO employees may be considered state employees for some purposes and county employees for others, the present case would still fall within these narrowed parameters of Orenic. The plaintiffs characterize the impact of the county personnel policy as "peripheral." This is a significant understatement. Holding PDO employees subject to the elaborate county personnel policy would pose the same sort of separation of powers problem that the Orenic court sought to prevent. The Illinois Supreme Court found that allowing the counties to assert joint employer status "would be an evisceration of the courts as free and independent employers of their own employees, since authority over compensation is central to employer status." Id., 130 Ill.Dec. at 468, 537 N.E.2d at 797. Like compensation, authority over the standards for disciplining and firing employees is "central to employer status," and should be left solely in the hands of the judicial branch.
 
 
 19
 To support their claims, the plaintiffs rely on Kurata v. Silverman, 95 Ill.App.3d 89, 50 Ill.Dec. 609, 419 N.E.2d 717 (1981), which held that an assistant public defender had the status of a county employee and was therefore protected by the county personnel policy. The majority opinion found county employee status appropriate since the county paid the public defender's salary and expenses, and the public defender was represented by the State's Attorney's Office. But Kurata predated the Illinois Supreme Court's holdings in Drury, supra, and Orenic which clearly discard any reliance on the fact that the county pays the salary. Kurata is also flawed in its reliance on the argument that the Public Defender is a county official since he is defended by a State's Attorney. By statute, the State's Attorney is authorized to represent both county and state officials. Ill.Rev.Stat. ch. 34, § 3-9005(4) (1989). We are also mindful of the fact that no matter who represents the Public Defender in lawsuits, the PDO itself performs an essentially state function, since it is the state and not the county that owes defendants a duty of representation under the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
 
 
 20
 The plaintiffs maintain that the Public Defender is not a state employee since, unlike the State's Attorney, he is not "essential" to the system of justice because the PDO is not established under the Illinois Constitution and its work can be done by private attorneys. To the contrary, representation of indigent defendants is a federal constitutional duty imposed on the states. Illinois case law has recognized how essential such representation is. "In a county as large as Cook County, the demand for the services of the Public Defender is so great as to insure the continued existence of the office of Assistant Public Defender." People of Cook County v. Majewski, 28 Ill.App.3d 269, 328 N.E.2d 195, 198 (1975). "Clearly, the representation of indigent defendants is a requirement of due process of law which constitutes a delegation of sovereignty to the office of the Public Defender." Id., 328 N.E.2d at 197. See also Kurata, 50 Ill.Dec. at 611, 419 N.E.2d at 719 (Trapp, J., dissenting).
 
 III.
 
 21
 We hold that as a matter of law, the plaintiffs were employees of the State of Illinois, and not of Cook County. Therefore, they were not subject to the county personnel policy when disciplinary action was taken against them. Since the plaintiffs alleged no other basis for claiming a property interest in their positions at the PDO, the district court properly dismissed their section 1983 claims. As no federal issues remained for adjudication, the district court correctly dismissed the plaintiffs' state law claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).[5]
 
 
 22
 AFFIRMED.
 
 
 23
 COFFEY, Circuit Judge, dissenting.
 
 
 24
 In the absence of any enabling legislation designating these employees as state employees, I am of the opinion that the plaintiffs were county rather than state employees because Cook County fixes the amount of, and pays, the plaintiffs' salary, health benefits, retirement benefits and fringe benefits. Thus, any disciplinary proceedings against them should have been conducted against them as county employees in compliance with the Cook County Personnel Policy.
 
 
 25
 A review of the Illinois enabling legislation's history and documents fails to reveal a provision designating the state or the county as the employer of the Public Defender's Office staff. However, the fact that the legislature has provided that all fringe benefits as well as "[t]he compensation of and the appropriate number of assistants, clerks, and employees [of the Public Defender's office] shall be fixed by the County Board and paid out of the county treasury" is strong indicia that the plaintiffs are county employees. Ill.Rev.Stat. ch. 34, p 3-4008.1 (1991) (emphasis added).[1] The majority overlooks the implications of the control statutorily delegated to the county over the Public Defender's Office (PDO) employees and relies instead upon Drury v. County of McLean, 89 Ill.2d 417, 60 Ill.Dec. 624, 433 N.E.2d 666 (1982), and Orenic v. State Labor Relations Bd., 127 Ill.2d 453, 130 Ill.Dec. 455, 466, 537 N.E.2d 784, 795 (1989), for its conclusion that PDO personnel are employed by the state. I disagree with the majority's view that either Drury or Orenic require a holding that PDO clerks are State employees.
 
 I.
 
 26
 A careful examination of the Orenic decision reveals that its holding is confined to specific problems arising under collective bargaining agreements:
 
 
 27
 "The principal question is whether, given their statutory role in funding the circuit courts, counties may be considered joint employers of those courts' non-judicial employees for purposes of collective bargaining under the Illinois Public Labor Relations Act (the Act) (Ill.Rev.Stat.1987, ch. 48, par. 1601 et. seq.). As explained later in this opinion, we answer that question in the negative...."
 
 
 28
 Orenic, 130 Ill.Dec. at 457, 537 N.E.2d at 786 (emphasis added). The Orenic decision does not and should not stand for the proposition that employees of the Public Defender's Office are state employees for all purposes because the decision is carefully limited to cases involving collective bargaining. Indeed, the Orenic decision is further narrowed in scope to collective bargaining under a specific labor law, the Illinois Public Labor Relations Act.
 
 
 29
 In Orenic, four chief judges of Illinois circuit courts brought a writ of mandamus to prevent the Illinois State Labor Relations Board from certifying that counties and the chief judges were joint employers of assistant public defenders, bailiffs, stenographers and certain clerks of the court. The judges argued that under the doctrine of separation of powers, the counties should not have the authority to participate much less interfere in collective bargaining between chief judges and unions representing those employees. The judges went on to contend that:
 
 
 30
 "even if the statutes requiring counties to fund circuit courts are constitutional, counties should have no authority to participate or interfere in collective bargaining between chief judges and labor organizations and that counties should be subject to chief judges' determinations as to number, salary, hours, and working conditions of court employees."
 
 
 31
 Orenic, 130 Ill.Dec. at 459, 537 N.E.2d at 788.[2] The judges reasoned that:
 
 
 32
 "[o]therwise ... the State's unified judicial system will experience a 'devastating impact' because of counties' local political considerations, the influence of employment terms applicable to the counties' own employees, and the counties' possible indifference to requirements for equal standards of judicial administration statewide."
 
 
 33
 Id. (citations omitted). The court resolved the issue by holding that "[a]ny conflict between traditional labor law principles and constitutional principles must be resolved in favor of the latter; and treating county boards as joint employers with chief judges in respect of the courts' nonjudicial employees would unduly trench on the judicial branch's separate and equal status." Id., 130 Ill.Dec. at 670, 537 N.E.2d at 799 (citation omitted).
 
 
 34
 This decision is all well and good, but it has no bearing on the problem before us. The issue in this case does not involve traditional labor law principles, and cases limited to labor law should not be used to bootstrap labor law to limit the plaintiffs' constitutional rights. Rather, our case involves the limited issue of whether employees of the Cook County Public Defender's Office, who are paid by the county and receive county health and welfare benefits, are county employees and thus entitled to due process hearings prior to termination of their employment. As the court in Orenic noted, "separation of powers does not mean a complete divorce among the branches of government and legislation may permissibly have a peripheral effect on judicial administration...." Id., 130 Ill.Dec. at 668, 537 N.E.2d at 797 (citations omitted) (emphasis added). Unlike the majority, I believe that acknowledging the county as employer for disciplinary proceedings has only a "peripheral effect" on the judiciary. It strains credulity to argue that termination policies instituted for the purpose of assuring due process to public employees somehow encroach on the separation of powers doctrine. The termination guidelines contained within the County Personnel Policy merely extend some safeguards against arbitrary discharges of county employees. No compelling arguments have been advanced that these procedures somehow interfere with or impair the functioning of the judiciary. It is the county that presumably bears the cost for the procedures, and the courts, if not altogether unaffected, are at most only peripherally impacted.
 
 
 35
 Further evidence that Orenic is limited to collective bargaining cases is reflected in two recent Illinois state cases and a federal district court case: People ex rel. Baricevic v. Wharton, 136 Ill.2d 423, 144 Ill.Dec. 786, 790, 556 N.E.2d 253, 257 (1990) (quoting Orenic as holding that "the Illinois State Labor Relations Board, an Executive Agency, cannot 'compel chief judges to share their collective bargaining authority with counties ...' ") (emphasis added); AFSCME v. Illinois Educ. Labor Relations Bd., 197 Ill.App.3d 521, 143 Ill.Dec. 541, 544, 554 N.E.2d 476, 479 (1990) (quoting Orenic as holding that "[w]hile the county exercised considerable fiscal control over the operations of the circuit courts," the "county governments were not joint employers for the purposes of collective bargaining") (emphasis added); and Riley v. County of Pike, 761 F.Supp. 74 (C.D.Ill.1991) (citing Orenic as focusing on who should be considered the employer for purposes of bargaining with the union ). Clearly, the Illinois courts as well as the district court in Riley have adopted the proper restrictive interpretation of the Orenic holding.
 
 
 36
 The majority also relies on Drury v. County of McLean, 89 Ill.2d 417, 60 Ill.Dec. 624, 433 N.E.2d 666 (1982), and Baker v. Du Page County, 703 F.Supp. 735, 737 (N.D.Ill.1989), both of which held that court clerks were state employees, notwithstanding the fact that their salaries were paid by the counties. The facts of both cases are readily distinguishable from the facts in the case before us. In both Drury and Baker, the plaintiffs were court clerks and not PDO clerks. Furthermore, both courts attributed the court clerks' classification as members of the judicial branch of state government to the Illinois Constitution. Obviously, neither factor (constitutional designation or court clerk status) are present in the case before us. In fact, it is because the enabling statute is not explicit with respect to PDO clerks' employment status that we are confronted with the statutory construction dispute.
 
 
 37
 Finally, contrary to the majority, I believe that the narrow holding of Orenic to issues of labor law does not overrule Kurata v. Silverman, 95 Ill.App.3d 89, 50 Ill.Dec. 609, 419 N.E.2d 717 (1981), which held that an assistant public defender had the status of a county employee and was therefore protected by the county personnel policy. In Kurata, the court considered the claim of an assistant public defender that she had been fired in violation of the termination policy of Champagne County. The court concluded that the plaintiff had "the status of a 'county employee.' " In making this determination, the court in Kurata considered the following:
 
 
 38
 "The office of public defender is created by statute in 'An Act in relation to the office of Public Defender' (Ill.Rev.Stat.1979, ch. 34, par. 5601 et seq.). The public defender's salary and expenses are paid from the county treasury. (Pars. 5605, 5607.) These provisions, plus the fact that the public defender is represented here by the State's Attorney, persuades us that the public defender is an official of the county. (See dissenting opinion in People v. South (1979), 70 Ill.App.3d 245, 26 Ill.Dec. 366, 387 N.E.2d 1294.) As such, an assistant public defender, such as plaintiff, has the status of 'county employee' within the purview of the county personnel policy."
 
 
 39
 Kurata, 50 Ill.Dec. at 610, 419 N.E.2d at 718.
 
 
 40
 Unlike Orenic, the court in Kurata was specifically dealing with the issue of the procedures that a Public Defender's Office must follow when disciplining or terminating an employee, the same issue that is before us. The failure of the court in Orenic to even cite Kurata, much less overrule it, is further evidence that the Illinois Supreme Court limited Orenic 's focus to the collective bargaining context, thus lessening its impact outside the narrow scope of labor law. On the basis of the case law cited above, I am of the opinion that the plaintiffs were county employees, and as such, any termination proceedings should have been conducted in compliance with the Cook County Personnel Policy.
 
 II.
 
 41
 The majority unfortunately disregards the significance of the language of the Illinois enabling act, particularly the 1991 amendments and their legislative history: "Speculation aside, the statutory language at the time of the alleged violation is inconclusive as to state or county employee status, and the legislative history of the statute then in force is not helpful." Maj.Op. at 1422. While I believe that PDO clerks were county employees under the original enabling act, the legislative history of the 1991 amendments reveals that the Illinois Legislature was intent on separating the Cook County Public Defender's Office from the judiciary:
 
 
 42
 "SENATOR COLLINS:
 
 
 43
 "Yes. Thank you, Mr. President and Members of the Senate. I move to concur with the House Amendment 1 to Senate Bill 673. As you recall, when this bill passed out of the Senate, we indicated that there was a task force working on the language to this amendment. The amendment that you see now is a consensus which reflects the ... agreement ... that is in this ... Amendment No. 1. What this amendment does, it simply separates and make[s], in the County of Cook, the ... Public Defender's Office independent of the Judiciary. This is a concept that has been recommended and supported by numerous studies and groups across the country, including the National Advisory Committee on Criminal Justice Standards. It is supported ... by the Chief Judge of the Circuit in Cook County, the Chicago Bar Association, the Cook County Bar Association, the County Board President. And the County Board in this particular bill[, the] President will, in fact, appoint the Chief Public Defender, and that person[ ] will have to be confirmed by the Commissioners of the Cook County Board. I will be happy to answer any questions. If not, I would just ask for a favorable roll call. [Unanimous vote in favor of amendment.]"
 
 
 44
 87th General Assembly, Regular Session (June 27, 1991). The legislative history is silent as to the reason for this change, but it was in all probability motivated by the legislature's desire to overcome the Illinois Supreme Court's opinion in Orenic designating assistant public defenders as state employees for collective bargaining purposes.
 
 
 45
 The extensive powers delegated to the county under the enabling statute and particularly pursuant to the 1991 amendments,[3] accentuate the dominant role of the county in the administration of PDO affairs. Initially, I note that it is the County Board rather than the judiciary that has the exclusive authority to create if it so chooses the office of the Public Defender in counties of less than 35,000 inhabitants. See Ill.Rev.Stat. ch. 34, p 3-4002. This delegation is especially significant because the authority was vested in the county both before and after the 1991 amendments. Second, it is the county, not the judiciary, that has the authority to fix, and bears the burden of paying, the compensation of the Public Defender and all of the subordinate employees. See pp 3-4007, 3-4008, 3-4008.1. Again, this authority/burden was the county's both before and after the amendment. Third, the PDO is made accountable to the county by having to file periodic written reports with the county on the services rendered by the PDO. See pp 3-4010, 3-4010.1. Although a copy of such reports is to be furnished to the circuit courts for counties with under one million inhabitants, according to the 1991 amendments no such requirement is imposed on the PDO with respect to counties such as Cook, where more than one million inhabitants reside. See p 3-4010.1. I would think the proposition unassailable that there is no employer-employee relationship where the employer is not even privy to an account of the services rendered by its purported employees. Fourth, pursuant to the 1991 amendments, the statute makes clear that "the appropriate number of assistants, clerks, and employees shall be fixed by the County Board" and not the judiciary in counties with over one million inhabitants. p 3-4008.1 (emphasis added). It is likewise difficult to fathom an employer-employee relationship where the employer does not determine the number of its employees. Fifth, the 1991 amendment delegates exclusive authority to the President of the County Board, with advice and consent of the County Board, not the judiciary, to appoint the Public Defender in counties with over one million inhabitants. See p 3-4004.1. Finally, the Public Defender himself is entitled to due process upon termination in counties with over one million inhabitants:
 
 
 46
 "The Public Defender once approved by the Board [County Board of Commissioners] shall serve for six years and may be removed by the President only for good cause or dereliction of duty after notice and a hearing before the Board."
 
 
 47
 p 3-4004.2(c) (emphasis added). How can the PDO employees under the Public Defender's authority be entitled to less due process from the county than the statute gives the Public Defender?[4]
 
 III.
 
 48
 On the basis of the case law, the enabling statute, the amendments thereto and their legislative history, I am convinced that PDO clerks are employees of Cook County. The only case directly addressing the issue of whether a PDO employee is entitled to due process before discharge held that even assistant Public Defenders who serve at the pleasure of the Public Defender are entitled to due process. See Kurata, 50 Ill.Dec. at 610, 419 N.E.2d at 718. Furthermore, the powers and duties imposed upon the county under the enabling statute and the amendments (fixing and paying salary and fringe benefits, appointing the Public Defender, providing office space and expenses for the PDO and receiving records of services the PDO renders) demonstrates conclusively that the Illinois Legislature considers PDO personnel in Cook County to be county employees. The legislative history of the 1991 amendments as well as the amendments themselves reveal that the Illinois Legislature views the Orenic court's holding that PDO personnel are employees of the state as limited to the specific circumstances of that case--the collective bargaining context. I would hold that the plaintiffs are county employees entitled to the due process protection assured under Cook County ordinances. The district court should be reversed.
 
 
 
 *
 The Honorable Harlington Wood, Jr. assumed senior status on January 16, 1992, which was after oral argument in this case
 
 
 [1]
 Although these cases were appealed separately, they were consolidated for purposes of oral argument. We now consolidate them for disposition
 
 
 [2]
 Several states do have statutes which declare decisively that persons working in the public defender system are state employees (see Tenn.Code Ann. § 8-14-208 (1991), 13 V.S.A. § 5254 (1990), 19 Okl.St. § 138.1 (1990)) or are county employees (see S.D.Codified Laws § 7-16A-6 (1991)). Illinois does not have a definitive statute
 
 
 [3]
 In support of its position, the dissent relies on the text and legislative history of the 1991 amendments to the public defender enabling act. We note, however, that the 1991 amendments have no bearing on the events at issue here which occurred in 1987 and 1988. In particular, the dissent relies on a statement by Senator Collins: "What this amendment does, it simply separates and make[s], in the County of Cook, the ... Public Defender's Office independent of the Judiciary." 87th General Assembly, Regular Session, Senate Transcript (June 27, 1991). If the 1991 amendments make the Cook County PDO independent of the judiciary, it follows that prior to the amendments, the PDO was not independent of the judiciary. Thus, at the time of the facts giving rise to the plaintiffs' complaints, separation of powers concerns were still implicated
 
 
 [4]
 The dissent cites three cases in support of its position that Orenic has been limited under Illinois law to the collective bargaining context. Yet, in each of those cases, the court emphasizes that Orenic represents a special case precisely because of the separation of powers concerns involved. People ex rel. Baricevic v. Wharton, 136 Ill.2d 423, 144 Ill.Dec. 786, 790, 556 N.E.2d 253, 257 (1990) (Orenic cited to support the statement that "[t]he prohibition on interfering with the judiciary's administrative authority applies to the executive branch as well as to the legislature."); AFSCME v. Educ. Labor Relations Bd., 197 Ill.App.3d 521, 143 Ill.Dec. 541, 544, 554 N.E.2d 476, 479 (1990) ("[T]he current case lacks the constitutional separation of powers question which underlies Orenic."); Riley v. County of Pike, 761 F.Supp. 74, 76 (C.D.Ill.1991) ("In Orenic ..., constitutional separation of powers concerns were one factor that led the Illinois Supreme Court to hold that the Illinois circuit courts could not be co-employers with the counties in which they sat, even though the counties set and paid the salaries of non-judicial employees.")
 
 
 [5]
 Because of our disposition of this case, we need not decide whether the defendants were acting according to official policy in disciplining the plaintiffs
 
 
 [1]
 Likewise, the Wisconsin Legislature has specifically provided that the counties are required to pay for the costs of the operation of the circuit courts, except for the salaries of the judges and court reporters:
 "Operating costs; circuit court
 The cost of operation of the circuit court for each county, except for the salaries of judges and court reporters provided to be paid by the state, and except for the cost assumed by the state under this chapter and chs. 40, 41 and 230, and except as otherwise provided, shall be paid by the county."
 Wis.Stat.Ann. § 753.19 (1981).
 At least one state has declared explicitly that PDO employees shall be considered County employees:
 "[Assistant public defenders, clerks] ... and the public defender shall, for administrative purposes, be considered to be employees of the county which administers the public defender fund."
 S.D. Codified Laws, § 7-16A-6 (1991).
 
 
 [2]
 The 1991 revisions to the enabling statute delegates the authority to the county as to the determination of salaries and number of employees to be placed with the PDO for Cook County. See Ill.Rev.Stat. ch. 34, p 3-4008.1 (1991)
 
 
 [3]
 The enabling statute, Ill.Rev.Stat. ch. 34, p 3-4000 et seq. was amended by P.A. 87-111, § 1, effective Aug. 9, 1991
 
 
 [4]
 The provision in p 3-4008.1 that assistant Public Defenders "shall serve at the pleasure of the Public Defender" should never be interpreted to deprive the assistants of due process at the time of termination of employment. As the court in Kurata noted, an ordinance may "protect the assistants from an unconstitutional discharge" without the statute requiring cause for dismissal. Kurata, 50 Ill.Dec. at 610, 419 N.E.2d at 718