Steven E. SAPIENZA, Plaintiff

v.

**COOK COUNTY OFFICE OF THE PUBLIC DEFENDER,**
Defendant.

No. 99 C 4386.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 23, 2001.

Herbert H. Victor, Chicago, IL, for Plaintiff.

Stephen L. Garcia, Thomas Vincent Lyons, Donald R. Hallsten, Jr., Cook County State's Attorney, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This case is before the Court on Defendant Cook County Office of the Public Defender's ("Office of the PD") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Steven E. Sapienza sued the Office of the PD for age discrimination, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623 *et seq.* (West 2000), for failing to promote him from the position of Investigator II to Investigator III. For the reasons set forth below, the Court grants Defendant's Motion.

### BACKGROUND

The undisputed facts are as follows. On March 1, 1994, the Office of the PD hired Mr. Sapienza, who was 58 years old, as an Investigator–Grade 16. (Defendant's Statement of Material Facts ("Def.'s

SMF") ¶¶ 9–10.) As an employee of the Office of the PD, Mr. Sapienza is covered under the collective bargaining agreement entered into between Cook County and the American Federation of State, County and Municipal Employees ("AFSCME"), Council 31, AFL–CIO, effective December 1995 ("CBA"). (Def.'s SMF ¶ 11.) The CBA governs, among other things, employment matters relating to the filling of vacancies within the Office of the PD. In relevant part, the CBA states:

> Vacancies will be filled by the most qualified applicant based on the totality of the following: skill tests, expertise in the particular area, performance appraisal, education, employment history and when applicable the interview. All bargaining unit members who meet the qualifications for a vacant position and who apply for a promotion/transfer will be considered.

(*Id.* at ¶ 15.) Significantly, the CBA also provides: "Transfer Unit/Promotion: For the Office of the Public Defender ... [w]hen filling a vacancy through promotion the most qualified applicant will be selected; in event qualifications are relatively equal, seniority will control." (*Id.* at ¶ 14.)

Between March 16 and 19, 1998, the Cook County Department of Human Resources ("County") posted a promotional notice for the position of Investigator III— Grade 18. (Def.'s SMF ¶ 16.) There had been no promotions of investigators in the Office of the PD since 1994. (*Id.* at ¶ 17.) Pursuant to the promotional notice, on March 12, 1998, Mr. Sapienza submitted a bid for a position as Investigator III— Grade 18. (*Id.* at ¶ 18.) Of the total applications submitted for the promotion

to Investigator III, the County sent the names of twenty eligible candidates (including Mr. Sapienza) to Rhonda Berryhill, the Personnel Coordinator of the Office of the PD. (*Id.* at ¶ 19.) Because all the applicants were union employees, the CBA, including the promotional instructions of the CBA, guided the promotional process. (*Id.* at ¶ 22.)

As part of the evaluation process, all candidates were required to submit a writing sample in the form of an essay, and to interview with a panel of four individuals. The panel of four consisted of: (1) Deborah White (age 40), Supervisor of the Felony Trial Division of the Office of the PD; (2) Jerome Tesmond (age 65), Investigator Supervisor for the Office of the PD; (3) Samuel Greene (age 58), Chief of Investigations of the Office of the PD, and (4) Ms. Berryhill (age 32), Personnel Coordinator of the Office of the PD. (Def.'s SMF ¶ 25.) The candidates were interviewed over a two-day period, and the panel interviewed each candidate individually.[1] (*Id.* at ¶ 26.)

After each candidate's interview, the panel openly discussed each candidate's performance, and then wrote down their own individual assessments. The panel members also individually evaluated each candidate's essay. At the conclusion of all the interviews, each interviewer identified, based upon each candidate's relative qualifications for the position, whether that candidate should be promoted, put on hold,[2] or not recommended for promotion. (Def.'s SMF ¶¶ 31–32.) The overall designation for each candidate was determined by the number of panel members who thought the candidate was promotable or not. (*Id.* at

---

1. While each member of the panel had the same list of questions, each panel member chose certain questions, based on their own specific expertise, from the list to ask each candidate during the interview. For instance, Ms. Berryhill, as a personnel supervisor, asked more of the general questions, while Ms. White, as an attorney, asked the questions pertaining to the relationship between attorneys and investigators. The Chief and Supervisor of investigations, Mr. Green and Mr.

Tesmond respectively, asked more of the technical questions. (Def.'s SMF ¶ 28.)

2. If a candidate was designated by the panel to be held, the candidate was deemed promotable, but not as qualified relative to the other candidates for purposes of filling the current vacancies. (Def.'s SMF ¶ 38.) As will be explained *supra*, Mr. Sapienza was placed on hold.

¶ 39.) The panel then created a list for submission to Xavier Velasco, Director of Suburban Operations (of which the Investigations Division is a part), designating the candidates recommended, as most qualified, for promotion to vacant Investigator III positions. (Id. at 41.) The Cook County Public Defender, Rita Fry, reviewed the recommendations from the interview panel, and then made the final decisions as to whom to promote.[3] Mr. Sapienza was placed on hold, and was not chosen for an immediate promotion. Consequently, he sued under the ADEA, alleging age discrimination.

Mr. Sapienza's allegations of age discrimination mainly center around his use of statistics. Of the twenty applicants who applied for the Investigator III—Grade 18 vacancies, ten were immediately promoted while ten were not (including Mr. Sapienza).[4] Of the ten who were promoted, their respective ages were 30, 40, 43, 33, 29, 30, 31, 35, 39 and 40. (Pl.'s Ex. List, Ex. D.) The ages of five individuals not immediately promoted were 40, 44, 42, 45 and 62 (Mr. Sapienza). (Id.) Significantly, Mr. Sapienza does not provide the ages of the remaining five individuals who were not immediately promoted.[5]

Besides statistics, Mr. Sapienza contends that the Office of the PD conducted a "bogus" test, so it could promote whom it wanted to promote—without considering qualifications and experience—and that the interview questions were biased against him. He also vehemently asserts that he was better qualified and had more experience than the candidates selected. Specifically, Mr. Sapienza maintains that the panel did not appropriately consider his past experience as an investigator at Pantry Pride. Furthermore, Mr. Sapienza argues that the individuals involved in the promotional process, namely some people on the interview panel, lacked the requisite experience in investigations to be making promotional decisions. As will be explained *infra*, Mr. Sapienza has not proven by a preponderance of the evidence that the Office of the PD's decision to place him on hold—and not immediately promote him—was motivated out of age animus.

### PROCEDURAL HISTORY

On or about January 26, 1999, Mr. Sapienza filed a timely charge of age discrimination with the Illinois Department of Human Rights, and received his Right to Sue letter on April 6, 1999. (Complaint ¶ 5.) On July 1, 1999, Mr. Sapienza timely filed his Complaint in federal court, alleging violations of the ADEA. On April 6, 2000,

---

3. At the time of the interviews, there were nine vacancies for Investigator III positions. However, later, a tenth Investigator III position opened, but Mr. Sapienza was not selected to fill this vacancy.

4. It is unclear, of the ten who were not immediately promoted, how many of them were placed on hold (as was Plaintiff) or summarily rejected.

5. Plaintiff's data and use of statistics is selective and confusing. Without the ages of the remaining five candidates who were not promoted, it is difficult to draw any meaningful conclusions. For instance, if those five individuals who were not promoted were under the age of 40, this fact would undermine Plaintiff's argument that Defendant discriminated against people over the age of 40. Furthermore, in Plaintiff's Response, he includes the age of employee Neff as 57, (Pl.'s Response at p. 3), and according to Exhibit D in Plaintiff's Exhibit List, Mr. Neff was at Grade 14 (not 16, and thereby applying for a promotion to Grade 16) when he applied for a promotion. But, significantly, Plaintiff neither discusses, in his Response, the ages of the other Grade 14 candidates who applied, and did not receive promotions, nor the Grade 14 candidates who applied, and did receive promotions. Therefore, Plaintiff selectively includes the ages of certain candidates (i.e. Neff), while not discussing the ages of others (i.e. other Grade 14 employees). Finally, on page 8 of Plaintiff's Response, he states that "[e]vidence shows that Defendant chose not to promote Plaintiff 62 years old; a 44 year old candidate; a 43 year old candidate; a 40 year old candidate; a 55 year old candidate and a 42 year old candidate." But, neither Exhibit D—nor the rest of the exhibits—contain any individuals with ages 55 and 43.

this case was reassigned to this Court pursuant to Local Rule 73.1. On October 16, 2000, Defendant filed its Motion for Summary Judgment, the present Motion before the Court.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact, and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating that no evidence exists to support the non-moving party's contentions. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994). The non-moving party may not rest on his pleadings, but must affirmatively demonstrate, by specific allegations, that a genuine issue of material fact exists which requires a jury trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the non-movant must do more than simply "show that there is some metaphysical doubt as to the material facts.")

In reviewing a motion for summary judgment, the Court must view the record and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the Court is "not required to draw every conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). Also, the non-moving party has to "produce more than a scintilla of evidence in support of his position." *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir.1999) (citations omitted).

### B. The Eleventh Amendment

Before delving into the substance of Plaintiff's age discrimination claim, it is necessary to address Defendant's argument that this case is barred by the Eleventh Amendment, which renders a State immune from any lawsuit brought by an individual in federal court, unless the State consents to being sued in that forum. While Congress may abrogate the States' Eleventh Amendment immunity and provide for federal jurisdiction over individual lawsuits against States, Congress only has this right pursuant to its enforcement power under Section 5 of the Fourteenth Amendment. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58–59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Recently, in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Supreme Court held that, in passing the ADEA, Congress did not validly abrogate the States' sovereign immunity to lawsuits by private individuals. Therefore, Defendant correctly asserts that Mr. Sapienza, a private individual, cannot sue a state in federal court under the ADEA.

The pivotal question, however, is whether the Office of the PD—the Defendant in the case *sub judice*—is an arm of the State of Illinois (therefore, barring this lawsuit), or whether the Office of the PD is an arm of Cook County, which is not subject to Eleventh Amendment immunity. *See Ruehman v. Sheahan*, 34 F.3d 525, 528 (7th Cir.1994) (holding that Illinois counties and municipalities are not shielded by the Eleventh Amendment). While Plaintiff argues that the Office of the PD should be considered an arm of the county—therefore, not barring his lawsuit—he primarily relies on arguments, contained in the dissent, of the Seventh Circuit case, *Warren v. Stone*, 958 F.2d 1419 (7th Cir. 1992), which held that the Cook County Public Defender's Office (the defendant in the case at bar) is a branch of the state. Relying on the dissent in *Warren*, Plaintiff argues, *inter alia*, that the Office of the PD should be considered an arm of the

**568**

county, because Cook County fixes the amount of, and pays the Cook County Public Defender's salary, health benefits, retirement benefits and fringe benefits. Additionally, as argued by Plaintiff, the county board chooses the Public Defender, and the CBA is with the county—not the state.

Given the Supreme Court's recent holding in *Kimel, supra,* and the persuasive dissent in *Warren,* Plaintiff urges this Court to revisit the issue of whether the Office of the PD is an arm of the state or the county. Inexplicable, however, is Plaintiff's reliance on a *dissent* in a 1992 Seventh Circuit case, when the Illinois Supreme Court has just recently stated, unambiguously, that the Office of the PD is an arm of the county. While this Court would be extremely reluctant to go against Seventh Circuit precedent—notwithstanding a persuasive dissent—the Illinois Supreme Court's recent decision in *Johnson v. Halloran,* 194 Ill.2d 493, 498, 252 Ill. Dec. 203, 206, 742 N.E.2d 741, 744 (2000), that the Office of the PD is an arm of the county, resolves the issue in favor of Plaintiff.[6]

Although a myriad of cases within the Seventh Circuit have considered the Office of the PD to be an arm of the state, these cases have largely relied on (now) outdated Illinois law describing its government agencies. *See, e.g., Warren, supra,* (holding, by relying on precedent in Illinois courts and a reading of Illinois statutes, that employees from the county public defender's office were employees of the State of Illinois and not Cook County); *Koutse-*

6. In Plaintiff's Response, he mentions, in passing, that the opportunity arose in *Johnson, supra,* to address the question of state or county affiliation of the Office of the PD, but that the facts of *Johnson* did not require the court to make a determination. (*See* Pl.'s Response at p. 11.) It is quite puzzling how Plaintiff's reading of *Johnson* missed the Illinois Supreme Court's unambiguous pronouncement that "[p]ublic defenders and their assistants are therefore county employees, not employees of the State of Illinois."

*las–McDonald v. Kowal,* 94 C 3502, 1995 WL 88992, at *6 (N.D.Ill. Feb. 24, 1995) (reaffirming principle that employees of Cook County Public Defender's Office are employees of the state); *Beacham v. Annerino,* No. 92 1417, 1993 WL 266540, at * 7 (N.D.Ill. July 15, 1993) (holding that an assistant public defender is an employee of the State of Illinois), *aff'd,* 82 F.3d 420 (7th Cir.1996); *Davidson v. Fry,* 91 C 5508, 1992 WL 122793 (N.D.Ill. May 22, 1992) (same). Because federal courts rely on Illinois law to characterize government agencies within Illinois, such as the Office of the PD, the recent Illinois Supreme Court case *Johnson* is extremely instructive.

In *Johnson,* the Illinois Supreme Court stated the following passage, which clearly illustrates that the Office of the PD should be considered an arm of the county:

> By statute, the office of public defender is created in the Counties Code, and the public defender systems in Illinois are organized and operated at the county level. In counties with a population over 1 million, which Cook County has, the public defender is appointed by the president of the county board of commissioners with the board's advice and consent. The board sets the rate of compensation for the public defender and the public defender's assistants, clerks and employees, and that compensation is paid out of the county treasury. The board is also responsible for providing suitable office quarters for the public defender and for paying, from the county treasury, necessary office, travel and

*Johnson,* 194 Ill.2d at 498, 252 Ill.Dec. at 206, 742 N.E.2d at 744. Despite Plaintiff's misreading of this case, Defendant brought *Johnson* to this Court's attention, even though *Johnson,* by holding that public defenders are county employees, undermines Defendant's position. Under these circumstances, the Court would especially like to applaud Defendant for bringing this recent case to the Court's attention, because it directly addresses the relevant inquiry here: whether Illinois considers its public defenders to be employees of the state or county.

other expenses incurred by the public defender in the defense of cases. The power to remove the public defender is vested in the president of the county board where, as here, the population of the county exceeds 1 million. In addition, section 5–1003 of the Counties Code provides that the county is required to indemnify the public defender or assistant public defenders for any judgment rendered against them for any injury to person or property they cause while engaged in the performance of their duties, except where the injury results from willful misconduct. Based upon the foregoing provisions, the office of public defender must be regarded as a county office rather than as an agency of the state.

*Johnson*, 194 Ill.2d at 497–98, 252 Ill.Dec. at 205–06, 742 N.E.2d at 743–44 (citations omitted).

In the case *sub judice*, Mr. Sapienza, as an Investigator, is an employee of the Office of the PD, and assists the public defenders in their jobs. Because the Illinois Supreme Court has explicitly held that the Office of the PD is an arm of the county—and not the state—the Eleventh Amendment does not bar the present controversy, where a county employee has sued the Office of the PD for age discrimination under the ADEA. The earlier Seventh Circuit cases which hold otherwise are not good law after *Johnson*. Hence, the Court must turn to the merits of this case.

## C. Age Discrimination Under the ADEA

 Under the ADEA, it is unlawful to "discharge any individual, ... because of [the] individual's age." 29 U.S.C. § 623(a)(1). The protected class constitutes employees "at least 40 years of age." 29 U.S.C. § 631(a). A plaintiff seeking relief under the ADEA must establish that he would not have been treated adversely by his employer "but for" the employer's unlawful motive to discriminate against him because of his age. *O'Connor v. De-*

*Paul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997). As with other types of discrimination cases, an ADEA plaintiff may prove age discrimination with either direct or circumstantial evidence. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir.1998). Therefore, Mr. Sapienza may avert summary judgment either by providing direct evidence of unlawful discrimination, or by satisfying all of the elements of the indirect burden-shifting method of proof formulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Since there is no evidence of direct discrimination in the case *sub judice*, the Court will proceed under the familiar *McDonnell Douglas* burden-shifting method.

 According to this framework, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of age discrimination. To do so, Mr. Sapienza must demonstrate: (1) that he belongs to a protected class of persons over 40 years of age; (2) that he applied and was qualified to be promoted to the Investigator III position; (3) that he was rejected despite his qualifications; and (4) that similarly situated younger employees were treated more favorably. *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919 (7th Cir.1996). If Mr. Sapienza establishes his *prima facie* case, then a presumption of discrimination arises, and the burden shifts to the Office of the PD to come forward with evidence of a "legitimate, non-discriminatory" reason for the adverse employment action. *Adreani, supra,* 154 F.3d at 393. However, once the Office of the PD provides a non-discriminatory reason, the presumption no longer exists, and the burden of proof shifts back to Mr. Sapienza to prove, by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 394.

 A plaintiff may establish pretext by showing that the defendant's proffered

reasons are lies or completely without factual basis. *Ghosh v. Indiana Dept. of Environmental Management,* 192 F.3d 1087, 1091 (7th Cir.1999). "To avoid summary judgment, a plaintiff must produce evidence from which a rational trier of fact could infer that the defendant lied about its proffered reasons for failing to promote him or that the reasons had no basis in fact." *Id.; see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2102, 147 L.Ed.2d 105 (2000) ("a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

In the case at bar, Defendant concedes that Mr. Sapienza has established his *prima facie* case of age discrimination.[7] However, Defendant argues that its legitimate, non-discriminatory reason for placing the Plaintiff "on hold", and not immediately promoting him, was based on the provisions set forth in the applicable CBA, which states that the most qualified applicants are to be promoted based on a totality of the following: "skill tests, expertise in the particular area, performance appraisal, education, employment history, and when applicable the interview." (Pl.'s Ex. List, Ex. I at 29.) Significantly, only if two or more applicants' qualifications are relatively equal is the Office of the PD supposed to look at seniority. (*Id.*) According to the Office of the PD, the four members of the interviewing panel individually assessed the twenty applicants—based on their interview performance and essay—and then collectively made recommendations, that eventually landed on Cook County Public Defender Rita Fry's desk. Ms. Fry made the final determina-

tions as to whom was immediately promoted, whom was placed on hold, and whom was rejected.

In order to defeat Defendant's Motion for Summary Judgment, Mr. Sapienza must prove, by a preponderance of the evidence, that the Office of PD's legitimate, non-discriminatory reason (*e.g.,* that Mr. Sapienza was not as qualified as the other candidates who were immediately selected for promotion), is a pretext. *See Wolf, supra,* 77 F.3d at 919 (finding that, where there is no evidence of direct discrimination, plaintiff must introduce evidence that demonstrates that (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the failure to promote; or (3) the proffered reasons were insufficient to support the employer's failure to promote). Mr. Sapienza's only evidence of pretext, however, are incomplete statistics and his subjective assertions that he was, indeed, more qualified than the candidates who were immediately selected for promotions.

First, with respect to Mr. Sapienza's use of statistics, of the twenty candidates for the Investigator III–Grade 18 position, ten were immediately promoted, while ten were not. Mr. Sapienza's alleged evidence of pretext is that five of the candidates who were not promoted were members of the protected class (*e.g.,* at least 40 years of age). Significantly, Mr. Sapienza does not provide the ages of the remaining five individuals who were not promoted. Also, the Court notes that, of the ten individuals who were promoted, three were in the protected category (ages 40, 40 and 43, respectively).

Nonetheless, even if Plaintiff's statistics were complete and more compel-

---

7. The Court does not need to decide whether Plaintiff has, indeed, successfully established his *prima facie* case, and can instead immediately analyze the issue of pretext. *See EEOC v. Our Lady of the Resurrection Medical Center,* 77 F.3d 145, 149–50 (7th Cir.1996) (supporting advancement to dispositive issue of

pretext without analysis of *prima facie* case); *Malacara v. City of Madison,* 224 F.3d 727, 729 (7th Cir.2000) ("Where the defendant has met its burden, it is irrelevant whether a *prima facie* case has been made.") (citation omitted).

ling, Plaintiff cannot prove age discrimination, in the Seventh Circuit, solely based on statistics.[8] *See, e.g., Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 616 (7th Cir.2000) ("[S]tatistics can only show a relationship between an employer's decisions and the affected employees' traits; they do not show causation."); *Adreani, supra*, 154 F.3d at 400 ("Our court generally has not found that statistical evidence concerning terminated employees, without more, is relevant to our analysis of whether the articulated reasons for discharging the plaintiff were pretextual or discriminatory."); *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 305 (7th Cir.1996) (concluding that "the mere fact that the five fired employees fell within the protected class, without more, does nothing to cast doubt upon [the employer's] articulated reasons for discharging [the employee]"); *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 851 (7th Cir.1992) (per curiam) (concluding that, when plaintiffs cite statistical evidence "consistent with age discrimination, but have presented no evidence that age actually motivated [the employer's] decision to terminate them," age discrimination has not been proven);

*Gilty v. Village of Oak Park*, 919 F.2d 1247, 1253, fn. 8 (7th Cir.1990) ("Standing virtually alone ... statistics cannot establish a case of individual disparate treatment.").

■■■ Despite the abundant authority that Mr. Sapienza cannot prevail on an age discrimination case solely with the use of statistics, Mr. Sapienza contends that he is not relying solely on statistics, but also on his assertions that the ten individuals chosen were not as qualified as he was, and that he had more experience. In this regard, he urges the Court to scrutinize the interview evaluations of the ten individuals who were promoted, and compare their evaluations with his own. Hence, Mr. Sapienza would have the Court read through 44 multi-page evaluations (11 individuals (ten plus his own) times 4 evaluators) and decide whether Mr. Sapienza was, indeed, more qualified for the position.[9] (*See* Pl.'s Ex. List, Exs. L–N.)

■■■ Even if the Court were to perform this tedious task, the Seventh Circuit has made it abundantly clear that a court should not reexamine an employer's busi-

---

8. It is unclear whether Plaintiff is arguing disparate impact or disparate treatment in his Complaint. To the extent any of Plaintiff's arguments implicate a disparate impact analysis (such as that the interview questions were biased against older individuals) the Court notes that, in the Seventh Circuit, a disparate impact theory of liability is not cognizable under the ADEA. *See, e.g., Maier v. Lucent Technologies, Inc.*, 120 F.3d 730, 734–35 (7th Cir.1997); *EEOC v. Francis W. Parker School*, 41 F.3d 1073 (7th Cir.1994).

9. Mr. Sapienza places great evidentiary weight on his charts (prepared in response to Defendant's interrogatories and attached as Ex. N in Pl.'s Ex. List) that show the candidates' ages compared with their respective levels of experience. Mr. Sapienza argues that these charts conclusively establish that substantially younger employees, with far less experience and worse qualifications, were promoted over older employees with much more experience and better qualifications. However, as pointed out by Defendant, the charts fail to include any of the criteria enumerated by the CBA when deciding whom to promote, such as expertise in a particular

area, skill tests, performance appraisal, education, employment history, and the interview. In *Vanasco v. National–Louis University*, 137 F.3d 962, 967 (7th Cir.1998), the court rejected a chart, in an age discrimination case, because the plaintiff did not set forth the relative qualifications of those listed. Here, Mr. Sapienza's argument that he appended the interview evaluations to the charts does not transform the charts into compelling evidence of age discrimination, or distinguish his situation from *Vanasco*—again, at best, the interview evaluations (even if the Court were to analyze 44 of them) are only one of many factors listed in the CBA for selecting candidates to promote. Furthermore, Plaintiff's continual emphasis on level of experience (i.e. seniority) is misplaced. As the CBA explicitly states: "[w]hen filling a vacancy through promotion the most qualified applicant will be selected; in event qualifications are relatively equal, seniority will control." (Pl.'s Ex. List, Ex. I at 29.) Since Defendant found the other candidates to be more qualified than Plaintiff, Plaintiff's level of experience is irrelevant.

ness decision, or substitute its own judgment as to whom is more qualified for a position—even if the employer's decision was wrong, unfair or unwise. *See, e.g., Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir.1994) ("[T]here is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or a bad business judgment."). In *Adreani, supra,* the plaintiff, who was also suing for age discrimination, attempted to raise an issue of material fact based on his own perceptions of his work performance. In affirming the district court's grant of the employer's summary judgment motion, the Seventh Circuit emphasized that "it is the perception of the decision maker, not the employee that is relevant." *Adreani,* 154 F.3d at 398; *see also Kuhn v. Ball State University,* 78 F.3d 330, 332 (7th Cir.1996) ("The ADEA is not a merit selection program. Employers may act for many reasons, good and bad; they may error in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter."); *Gustovich, supra,* 972 F.2d at 848 (noting that the "question is not whether the [below-average] ratings were right but whether the employer's description of its reasons is honest").

Thus, although Mr. Sapienza asserts that he was more qualified than the candidates selected for immediate promotions, and that the Defendant should have taken into account his past experience as an investigator at Pantry Pride, as the aforementioned cases illustrate, the overall correctness of the Office of the PD's decision, as to whom was more qualified, is irrelevant to the analysis of pretext. Rather, the critical inquiry is whether the Office of the PD genuinely believed that the other candidates were more qualified for immediate promotion than Mr. Sapienza. *See, e.g., Beatty v. Wood,* 204 F.3d 713, 718 (7th Cir.2000) ("on the issue of pretext our only concern is the honesty of the employer's explanation") (citation omitted). Furthermore, Mr. Sapienza's assertion that the individuals involved in the promotional process, namely some people on the interview panel, lacked the requisite experience in investigations to be making promotional decisions, is not a concern of the Court. *See Testerman, supra,* 98 F.3d at 304 (requiring the court "to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives").

Finally, the Court finds it particularly noteworthy that Mr. Sapienza was 58 years of age—well into the protected age category—when he was initially hired, in 1994, by the Office of the PD. This fact, while not dispositive, further belies Plaintiff's claim that the Office of the PD's decision to place him on hold was motivated out of age animus. *See Wolf, supra,* 77 F.3d at 923–24 (noting that "it is not insignificant that [employee] was initially hired by [employer] at the age of 50—fully ten years into the protected age group. This fact, although not conclusive, is somewhat indicative of [employer's] lack of discriminatory intent."). Furthermore, three of the four members of the interview panel—Mr. Tesmond (age 65), Mr. Greene (age 58), and Ms. White (age 40)—were themselves members of the protected class, thereby giving rise to an inference of non-discrimination. *See Richter v. Hook–SupeRx,* 142 F.3d 1024, 1032 (7th Cir.1998) ("While not dispositive, this Court has found it significant that individuals alleged to have discriminated on the basis of age were themselves members of the protected class.")

In sum, Plaintiff has produced no evidence that the Office of the PD's process of identifying the most qualified candidates (as delineated in the applicable CBA)—including the evaluation of essays, the individual and group assessments of the candidates' interview performance, education, employment history, etc.—was dishonest

or factually baseless. Consequently, Mr. Sapienza has not proven by a preponderance of the evidence that Defendant's legitimate, non-discriminatory reasons for placing him on hold—and not immediately promoting him—were a pretext for unlawful age discrimination.

### CONCLUSION

Accordingly, for the reasons set forth above, Mr. Sapienza has not raised a genuine issue as to any material facts, and the Defendant is, therefore, entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that: Defendant's Motion for Summary Judgment be, and the same hereby is, GRANTED.